**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN ROBERTO ALBINO,
*Plaintiff-Appellant*,

v.

LEE BACA, Los Angeles County
Sheriff; LOS ANGELES COUNTY,
*Defendants-Appellees*.

No. 10-55702

D.C. No.
2:08-cv-03790-
GAF-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted En Banc
June 27, 2013—Seattle, Washington

Filed April 3, 2014

Before: Alex Kozinski, Chief Judge, and Stephen
Reinhardt, Kim McLane Wardlaw, William A. Fletcher,
Richard C. Tallman, Jay S. Bybee, Milan D. Smith, Jr.,
Sandra S. Ikuta, N. Randy Smith, Mary H. Murguia and
Paul J. Watford, Circuit Judges.

Opinion by Judge W. Fletcher;
Dissent by Judge N.R. Smith

# SUMMARY[*]

## Prisoner Civil Rights

The en banc court reversed the district court's grant of summary judgment for defendants and remanded with instructions to enter summary judgment for plaintiff on the issue of whether he exhausted his administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prior to bringing suit.

First, the court overruled *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that a failure to exhaust under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion." The court held that to the extent evidence in the record permits, the appropriate procedural device for a pretrial determination of whether administrative remedies have been exhausted under the Prison Litigation Reform Act is a motion for summary judgment. If summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding.

Second, the court held that plaintiff satisfied the exhaustion requirement of § 1997e(a). The court determined that defendants failed to prove that administrative remedies were available at the jail where plaintiff was confined. Because no administrative remedies were available, the court determined that plaintiff was excused from any obligation to exhaust under § 1997e(a). The court sua sponte directed that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

summary judgment be granted to plaintiff on the issue of exhaustion.

Dissenting, Judge N.R. Smith, joined by Judges Tallman and Ikuta, wrote that the majority opinion (1) ignored the "clearly erroneous" standard of review in reviewing the district court's findings; (2) mandated the production of unprecedented evidence in order for the defendants to meet their burden of proof on exhaustion; (3) granted summary judgment to the plaintiff *sua sponte*, without allowing the defendants the opportunity to produce the newly mandated evidence; and (4) changed the procedure by which courts determine whether a plaintiff has exhausted administrative remedies.

## COUNSEL

Andrea Renee St. Julian (argued), San Diego, California, for Plaintiff-Appellant.

James C. Jardin (argued), Melinda W. Ebelhar, Catherine M. Mathers, Christian E. Foy Nagy, Collins Collins Muir & Stewart LLP, South Pasadena, California, for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Juan Roberto Albino brought suit against Los Angeles County Sheriff Lee Baca, several Doe defendants, and Los Angeles County, alleging violations of 42 U.S.C. § 1983, as well as several state laws, arising out of injuries Albino suffered while confined in Los Angeles County jail. Albino's claims are subject to the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner challenging prison conditions exhaust available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Defendants moved for summary judgment based, inter alia, on Albino's alleged failure to exhaust. The district court granted the motion, dismissing Albino's federal claims without prejudice. The court also dismissed his state claims without prejudice. *See* 28 U.S.C. § 1367(c). We reverse.

First, although it may be more a matter of a change of nomenclature than of practical operation, we overrule *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), in which we held that a failure to exhaust under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion." We conclude that a failure to exhaust is more appropriately handled under the framework of the existing rules than under an "unenumerated" (that is, non-existent) rule. Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden. If undisputed evidence viewed

in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts.

Second, we hold that Albino has satisfied the exhaustion requirement of § 1997e(a). Defendants have failed to prove that administrative remedies were available at the jail where Albino was confined. Because no administrative remedies were available, he is excused from any obligation to exhaust under § 1997e(a). We therefore direct the district court to grant summary judgment to Albino on the issue of exhaustion.

## I. Background and Proceedings Below

Albino proceeded pro se in the district court. The following narrative is based largely on the evidence submitted to the district court by both parties. It is based partly on allegations in Albino's verified first amended complaint that are uncontradicted by evidence in the record. Except where otherwise noted, the narrative is based on undisputed evidence.

Glendale Police officers arrested Albino for rape under California Penal Code § 261(a)(1). He was not arrested for a sexual crime against a minor. After his arrest, Albino was brought to the Los Angeles County Men's Central Jail. He alleges that when he arrived at the jail on May 11, 2006, deputies refused to place him in protective custody. Instead, they placed him in the general population of a high-medium security housing unit. Albino is 5 feet 3 inches tall. At the time, he weighed 123 pounds.

Albino alleges in his complaint that on June 16, 2006, an inmate approached him and said, "[T]he deputy said you committed sex acts with children." A group of several inmates then attacked Albino, beating him unconscious, cutting him severely, and raping him. Albino reported the assault to Deputy Jaquez, who wrote up an "Incident Report" dated June 17. Despite the one-day disparity in dates, it is clear that Albino's complaint and Deputy Jaquez's report deal with the same incident. Deputy Jaquez wrote that Albino "was holding a white piece of cloth over his right jaw and was bleeding profusely. He also had multiple cuts and redness throughout his entire facial area and he complained of pain to his face." Albino had "two lacerations approximately 6 [inches] in length across the side of his right cheek. . . . He also had multiple cuts and redness around his right eye." The lacerations were deep cuts in the form of a cross. Albino also suffered broken teeth, broken ribs, a broken shoulder, and damage to his hip.

Deputy Jaquez wrote in his report that Albino recounted to him that he had told several inmates that he was in jail for rape, but that it had been his partner who had raped a sixteen-year-old girl. Deputy Jaquez identified Albino's attackers, including an inmate named Rodriguez. Deputy Jaquez wrote that he spoke to Rodriguez, who admitted to having been one of those who had beaten Albino. Deputy Jaquez wrote that Rodriguez told him that "Albino . . . came in last night bragging about that he had raped a girl."

Albino was taken to the hospital for treatment. When he returned from the hospital, Albino again asked to be placed in protective custody. He states in a declaration, "After the first attack, I pleaded with many staff members for help but

the only thing anyone told me was; it is your attorneys [sic] job to protect me." Albino states in another declaration:

> Of the ap[p]rox. 10 or so times plaintiff begged defendant custodial deputies to be placed in segregation or for the[m] to help me, defendants[] responded that it was my attorney's job to protect me. As these were sworn peace officers, I was of the belief that I had to seek my trial attorney's help.

Despite Albino's pleas, deputies did not place him in protective custody upon his return from the hospital. Instead, they placed him in a different general-population housing unit. Sometime in mid-July, two inmates in the new unit attacked Albino, punching and kicking him "numerous times." Albino reported this second attack to Deputy Espinosa. This time Albino did not identify his attackers. In his "Incident Report," Deputy Espinosa wrote, "Swelling under his left eye, swelling to his left side of his forehead, and swelling to his right temple." Albino was taken to the jail clinic rather than the hospital. He alleges in his complaint that some of the wounds from the first attack had been opened, and that his treatment at the clinic consisted only of pain medication.

Albino alleges in his complaint that after the second attack he again requested protective custody, but a deputy told him it "wasn't needed." The deputy instead placed him in yet a third general-population housing unit. In September 2006, Albino was assaulted a third time. He was taken to the jail clinic. He alleges that he suffered "damage to old wounds, including plaintiff's right eye."

As a result of these attacks, Albino has suffered severe nerve damage on the right side of his face. He has also lost hearing in his right ear and most of the vision in his right eye. He now uses a hearing aid and a cane for the blind. He states in his declaration:

> My trial attorney had to ask the court for 3 court orders to get me any medical care for my injuries, and dental care. It was not until I arrived at CDCR [California Department of Corrections and Rehabilitation] that [I received] a proper Examination, [and] the doctor told me it was too late to repair the nerve damage.

Albino states in a declaration filed in the district court that he was given no orientation when he was brought to the jail, that he never saw a manual describing complaint procedures, that he never saw complaint forms or a complaint box, and that when he complained and asked for help he was consistently told by deputies at the jail that he should talk to his attorney.

Defendants provided a declaration by Deputy Jason Ford, to which he attaches a copy of "Custody Division Manual § 5-12/010.00 'Inmate Complaints.'" They also provided a declaration in which Deputy Kevin Kelley describes the complaint process in the jail, describes complaint boxes and their placement, and recounts the manner in which complaint forms are made available.

Defendants moved for summary judgment. They contended that Albino had failed to exhaust his remedies at the jail system prior to filing suit, as required by 42 U.S.C.

§ 1997e(a). In the alternative, they contended on the merits that Albino had failed to show any constitutional violations. Albino did not cross-move for summary judgment.

In his Report and Recommendation, the magistrate judge recommended granting summary judgment to defendants on the ground that defendants had "an accessible administrative procedure for seeking redress of grievances," and that Albino did not exhaust his remedies under that procedure. The district court accepted the recommendation of the magistrate judge and granted summary judgment to defendants. The court dismissed Albino's complaint without prejudice for failure to exhaust. Neither the magistrate judge nor the district court reached the merits of Albino's claims.

A three-judge panel of this court affirmed, treating the defendants' summary judgment motion with respect to exhaustion as an unenumerated Rule 12(b) motion. *Albino v. Baca*, 697 F.3d 1023, 1029–30 (9th Cir. 2012). We vacated the panel decision and granted rehearing en banc. *Albino v. Baca*, 709 F.3d 994 (9th Cir. 2013). We now reverse.

## II. Standard of Review

We review de novo a district court's grant of summary judgment. *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In our de novo review of a district court's summary judgment ruling, we view the evidence in the light most favorable to the non-moving party. *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

### III. Discussion

We decide two questions. First, we hold that an unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA. *See* 42 U.S.C. § 1997e(a). To the extent evidence in the record permits, the appropriate device is a motion for summary judgment under Rule 56. If summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding. Second, we hold that defendants are not entitled to summary judgment that Albino failed to exhaust available administrative remedies. Further, we hold *sua sponte* that Albino is entitled to summary judgment that there were no available administrative remedies at the jail within the meaning of the PLRA, and that he therefore satisfied § 1997e(a)'s exhaustion requirement.

### A. Summary Judgment or Unenumerated Rule 12(b)

In holding that the proper procedural device for defendants to raise an exhaustion defense is an unenumerated Rule 12(b) motion, the panel followed our decision in *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). *Wyatt* is a PLRA prison-conditions case in which we held that "the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Id.* at 1119. After we decided *Wyatt*, the Supreme Court held in *Jones v. Bock*, 549 U.S. 199 (2007), that exhaustion under § 1997e(a) is an affirmative defense that must be pled and proved by a defendant. *Id.* at 216. In reaching this conclusion, the Court wrote that "courts

should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Id.* at 212. "[T]he PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." *Id.* at 214.

The Court in *Jones* cited our decision in *Wyatt* approvingly for its conclusion that PLRA exhaustion is an affirmative defense, but it did not comment on our use of an unenumerated Rule 12(b) motion for determining whether administrative remedies had been exhausted. *Id.* at 204 n.2. While *Wyatt*'s use of an unenumerated Rule 12(b) motion is consistent with PLRA's purpose of limiting prisoner litigation by screening cases at the outset of the litigation, *see id.* at 202, it is in tension with the Court's admonition in *Jones* against deviating from "the usual practice under the Federal Rules." *Id.* at 212. The very phrase we used in *Wyatt*—"an unenumerated Rule 12(b) motion"—is a concession that such a motion is not contemplated by the rules. We conclude that *Wyatt* is no longer good law after *Jones* (if it ever was good law), and that we should treat an exhaustion defense under the PLRA within the framework of the Federal Rules of Civil Procedure.

In a few cases, a prisoner's failure to exhaust may be clear from the face of the complaint. However, such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint. As the Court wrote in *Jones*, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. But in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to

dismiss under Rule 12(b)(6) for failure to state a claim. *See id.* at 215–16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact." (citation omitted)); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

In a typical PLRA case, a defendant will have to present probative evidence—in the words of *Jones*, to "plead and prove"—that the prisoner has failed to exhaust available administrative remedies under § 1997e(a). *Jones*, 549 U.S. at 204. The procedure under which a defendant must do so is provided by the Federal Rules. The general outlines of that procedure, applicable to all civil cases, are well understood. If the evidence permits, the defendant may move for summary judgment under Rule 56. If there is a genuine dispute about material facts, summary judgment will not be granted.

The Court in *Jones* cautioned that we should not alter the ordinary procedural practices and rules in order to serve the policy aims of the PLRA. *Id.* at 214. At the same time, however, the Court recognized that "the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Id.* at 202. A rule requiring exhaustion of prescribed administrative remedies "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds as stated*

*in Booth v. Churner*, 532 U.S. 731, 740–41 (2001).  Courts have exercised substantial discretion in fashioning exhaustion rules, though "appropriate deference to Congress' power to prescribe the basic procedural scheme . . . requires fashioning of exhaustion principles in a manner consistent with congressional intent." *Id.* at 144.

The Court recognized in *Jones* that the exhaustion question in PLRA cases should be decided as early as feasible. We conclude, consistent with *Jones* as well as with non-PLRA cases, that exhaustion is analogous to subject-matter jurisdiction, personal jurisdiction, venue, and abstention, in that all these matters are typically decided at the outset of the litigation.  There are, of course, differences. For example, a defect in subject-matter jurisdiction, unlike a failure to exhaust, is a nonwaivable defect. *See Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007).  And while personal jurisdiction and venue are waivable defects, they are unlike a failure to exhaust in that they merely concern a choice among courts; they do not concern a prerequisite to bringing suit in any court.  But, broadly speaking, subject-matter jurisdiction, personal jurisdiction, venue, abstention, and exhaustion are all issues of "judicial administration" that are appropriately decided early in the proceeding.  *See, e.g.*, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938) (referring to the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted").  In the words of the Seventh Circuit, these are all issues of "judicial traffic control." *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008).

For the guidance of the district courts in this circuit, we describe the procedure that we believe will best achieve the purposes of the exhaustion doctrine in PLRA cases, consistent with the Federal Rules. The procedure we describe is essentially that followed in PLRA cases in the Second, Third, Fifth and Seventh Circuits. *See Messa v. Goord*, 652 F.3d 305, 308–10 (2d Cir. 2011) (per curiam) (court denied defendants' motion for summary judgment for failure to exhaust; court rather than jury resolved disputed questions of fact); *Small v. Camden Cnty.*, 728 F.3d 265, 269–71 (3d Cir. 2013) (same); *Dillon v. Rogers*, 596 F.3d 260, 270–73 (5th Cir. 2010) (same); *Pavey*, 544 F.3d at 741–42 (court rather than jury should resolve disputed questions of fact). All four of these circuits use a motion for summary judgment, as opposed to an unenumerated Rule 12(b) motion, to decide exhaustion, and all four allow resolution by the judge of disputed factual issues. Now that we have joined these circuits, only the Eleventh Circuit employs an unenumerated Rule 12(b) motion to decide exhaustion of non-judicial remedies in PLRA cases. *See Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008).

Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit. *See Pavey*, 544 F.3d at 742. A summary judgment motion made by either party may be, but need not be, directed solely to the issue of exhaustion. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. *See McNutt v.*

*Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–90 (1936) (subject-matter jurisdiction); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139–40 (9th Cir. 2004) (venue); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (personal jurisdiction). We reiterate that, if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation.

If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits. On appeal, we will review the judge's legal rulings on exhaustion de novo, but we will accept the judge's factual findings on disputed issues of material fact unless they are clearly erroneous. *See Akhtar v. Mesa*, 698 F.3d 1202, 1209 (9th Cir. 2012); *Dillon*, 596 F.3d at 273. We agree with the Seventh Circuit that, if a factual finding on a disputed question is relevant both to exhaustion and to the merits, a judge's finding made in the course of deciding exhaustion is not binding on a jury deciding the merits of the suit. *See Pavey*, 544 F.3d at 742; *cf. Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508–11 (1959).

We recognize that our use of unenumerated Rule 12(b) motions to decide exhaustion questions has not been limited to PLRA cases. *See, e.g.*, *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (en banc) (relying on *Wyatt* in describing procedures to be followed in deciding whether non-judicial remedies under the Individuals with Disabilities Education Act had been exhausted); *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1078 n.2 (exhaustion of non-judicial remedies under the Labor Management Relations Act ("LMRA")); *Ritza v. Int'l*

*Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam) (LMRA); *Stauffer Chem. Co. v. FDA*, 670 F.2d 106, 108 (9th Cir. 1982) (exhaustion of non-judicial remedies with the Food and Drug Administration); *Studio Elec. Technicians Local 728 v. Int'l Photographers of Motion Picture Indus., Local 659*, 598 F.2d 551, 552 n.2 (9th Cir. 1979) (exhaustion of non-judicial remedies under the LMRA).  In light of the decisions of our sister circuits, and of our decision in this case, we believe that the basic procedure outlined here—under which a party may move for summary judgment on the exhaustion question, followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion—is appropriate in these other contexts as well.

## B.  Summary Judgment on Exhaustion

The PLRA mandates that inmates exhaust all available administrative remedies before filing "any suit challenging prison conditions," including, but not limited to, suits under § 1983.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  An inmate is required to exhaust only *available* remedies. *Booth*, 532 U.S. at 736; *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005).  To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand."  *Id.* at 937 (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)).

The Court made clear in *Jones* that the defendant in a PLRA case must plead and prove exhaustion as an affirmative defense.  In determining the exhaustion burdens applicable to PLRA cases, the three-judge panel in this case cited the exhaustion burdens applicable to claims under the Torture Victim Protection Act ("TVPA").  *Albino v. Baca*,

697 F.3d 1023, 1031 (9th Cir. 2012) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  We agree with the three-judge panel that the burdens outlined in *Hilao* should provide the template for the burdens here.  We wrote in *Hilao*:

> The legislature's intended operation of the exhaustion provision [of the TVPA] is set forth with remarkable clarity in the Senate Report:
>
> . . . .
>
> . . . [T]he interpretation of [the exhaustion provision of the TVPA] should be informed by general principles of international law.  The procedural practice of international human rights tribunals generally holds that *the respondent has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that domestic remedies exist that the claimant did not use.  Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.*
>
> S. Rep. No. 249 at 9–10.

*Hilao*, 103 F.3d at 778 n.5 (emphasis added).

Transposing *Hilao*'s approach onto the PLRA, we hold that the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. *See id.* ("[T]he respondent . . . must show that domestic remedies exist that the claimant did not use."). Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *See id.* ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."). However, as required by *Jones*, the ultimate burden of proof remains with the defendant.

Our sister circuits generally agree with this description of the respective burdens. For example, in *Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005), the Seventh Circuit wrote:

> [A]s this case comes to us, we find the record hopelessly unclear . . . whether any administrative remedy remained open for the prisoners to challenge their transfers through the grievance process. . . . IDOC failed to meet its burden of proving that [the prisoners] failed to exhaust an *available* administrative remedy . . . .

*Id.* at 580 (internal quotation marks omitted). In *Tuckel v. Grover*, 660 F.3d 1249 (10th Cir. 2011), the Tenth Circuit similarly put the burden on defendants to prove that the prisoner did not use existing and generally available administrative remedies. Once that was proved, however,

"the onus [fell] on the plaintiff to show that [these] remedies were unavailable to him as a result of intimidation by prison officials." *Id.* at 1254; *see also Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001).

We have considered in several PLRA cases whether an administrative remedy was "available." In *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010), we held that where a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable." *Id.* at 1226. In *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010), we held that where prison officials declined to reach the merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." *Id.* at 823–24. In *Marella v. Terhune*, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance. *Id.* at 1027–28. We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him. *Id.* at 1027.

In the case now before us, defendants conducted all the discovery that they considered necessary, including taking Albino's deposition. They then moved for summary judgment, even though not required to do so under our then-governing precedent, contending that Albino failed to exhaust available administrative remedies. In the alternative, if Albino had successfully exhausted, they contended that

Albino's claims failed on the merits.  The magistrate judge recommended, and the district court granted, summary judgment to the defendants on the issue of exhaustion.  The district court did not reach the merits of Albino's claims.

We hold that the district court erred in granting summary judgment to defendants on the issue of exhaustion.  We further hold that Albino is entitled to summary judgment on that issue.

We discuss in a moment our reasons for so holding, but we first address the contention of our dissenting colleagues that we have improperly "ignore[d] the 'clearly erroneous' standard of review in reviewing the district court's findings." Diss. Op. at 30–31.  Our dissenting colleagues misunderstand the procedural posture of this case.  The district court granted summary judgment to the defendants.  It is black-letter law that in granting summary judgment a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  On appeal, we review de novo a district court's ruling on a summary judgment motion.  *Whitman*, 541 F.3d at 931.  Like the district court, we cannot resolve any disputed questions of material fact; rather, like the district court, we must view all of the facts in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts.  *San Diego Police Officers' Ass'n*, 568 F.3d at 733.

Our dissenting colleagues misread our decision in *Morton v. Hall*, 599 F.3d 942 (9th Cir. 2010).  Diss. Op. at 34.  The

district court in that case conducted an evidentiary hearing on the question whether Morton, a prisoner, had exhausted his administrative remedies. *Id.* at 944. Defendants put on two witnesses who testified about administrative procedures at the prison, and who testified that they had found no evidence that Morton had ever filed a grievance. Morton contended that he had exhausted his administrative remedies, but he put on no witnesses of his own. *Id.* We wrote, "The district court found that Morton had failed to exhaust administrative remedies on his § 1983 claims . . . and dismissed those claims without prejudice." *Id.* We concluded, "On this record, the district court did not commit clear error by finding that Morton had failed to exhaust administrative remedies on his § 1983 assault claim." *Id.* at 945. Contrary to the contention of our dissenting colleagues, there is no indication in *Morton* that we thought we were reviewing a summary judgment by the district court on issue of exhaustion. And there is not so much as a hint in *Morton* that we thought we were changing our summary judgment procedure, such that we were required to review for clear error the district court's understanding, on summary judgment, of the facts viewed in the light most favorable to the non-moving party.

Our dissenting colleagues contend that in this case we must review for clear error the district court's understanding of the facts because that court "did decide disputed factual issues." Diss. Op. at 34. We disagree that we must review for clear error the district court's understanding of the facts. The district court was explicit in stating that it was deciding a motion for summary judgment. Because the district court was deciding a motion for summary judgment, it could not decide disputed issues of material fact; and because it could not decide any disputed issue of material fact, we are not

required (or even allowed) to review its understanding of the facts for clear error.

Defendants introduced two declarations specifically directed to exhaustion. First, Deputy Ford provided a declaration to which he attached a copy of Custody Division Manual § 5-12/010.00, titled "Inmate Complaints." This portion of the Manual is four and a half pages long, single-spaced. It sets out in some detail the administrative procedures to be followed in processing prisoner complaints. Among other things, the Manual provides:

> Each unit commander shall designate a supervisor, at the permanent rank of sergeant or above, to assume the collateral duty of Inmate Complaint Coordinator. The unit commander shall also ensure that each housing unit within the facility has an adequate supply of Inmate Complaint Forms available, and that the inmates have unrestricted access to the forms. All inmates are permitted to report a complaint, whether or not it is written on the specified form. Each housing area shall have a locked repository accessible to inmates, where they are allowed to deposit their completed forms without interference.

Second, Deputy Kelley provided a declaration in which he states:

> I have personal knowledge of the policies and procedures in place regarding inmate complaints/grievances at Men's Central Jail as

of the time of the incidents alleged in the First Amended Complaint.

At Men's Central Jail, inmates are given access to Inmate Complaint Forms to fill out, or they may submit a written complaint of any kind, to address any number of issues, including but not limited to personnel conduct, medical care, classification actions and conditions of confinement. *The Inmate Complaint Forms are available at various locations within the facility, and an adequate supply is maintained and available for any inmate who requests them.*

Inmates may place their complaints in a locked complaint box, or give them directly to the staff.

(Emphasis added.)

For his part, Albino provided a declaration in which he states:

At no time during my stay was I interviewed by jail staff, or given any type of orientation. . . .

At no time during my stay at the jail did I see a LASD Custody Division Manual § 5-12/010.00, or if I did it was not in Spanish where I could read and understand what it was. I have never seen or heard of a LASD Jail complaint form.

. . . .

I never seen [sic] a complaint box, and no one told me of such a complaint box.

. . . After the first attack, I pleaded with many staff members for help but the only thing anyone told me was; it is your attorney[']s job to protect me.

. . . .

During the 10 or so times I begged officers to be placed in segregation. Not one officer or staff member handed me a complaint form or a rule book and told me to fill out the form and they would put it in a box. All any of the staff told me was my public defender[']s job to protect me. My public defender also never informed me of a LASD complaint form.

The Custody Division Manual, with its section dedicated to "Inmate Complaints," is of little help to defendants. Defendants have conceded that the Manual was a personnel manual that was available only to jail employees. Prisoners, including Albino, were not given access to the Manual. Indeed, so far as the record shows, inmates were not even told of the existence of the Manual.

Deputy Kelley's declaration is hardly more helpful. He states that an "adequate supply" of Inmate Complaint Forms is "maintained," and that they are "available for *any inmate who requests them*" (emphasis added). The clear implication

of Deputy Kelley's statement is that the forms are available
only on request; that is, they are not placed where inmates
may see and take them on their own. Further, there is nothing
in Deputy Kelley's statement indicating that inmates are told
that a complaint must be in writing, or that a written
complaint, even if not on an official form, will be considered.
Finally, Deputy Kelley declares that inmates may place their
complaints in a "locked complaint box," but he does not
describe the box or its location in the unit. Nor, indeed, does
he say that the box is labeled in any way to indicate its
function. When pressed at oral argument, defendants'
attorney rested on Deputy Kelley's declaration, even though
he was obliged to concede that Deputy Kelley did not say
where the complaint box was placed or whether there was
anything written on the outside of the box.

Thus, so far as the record shows, there is a personnel
manual describing a complaint process, but the manual is not
available, or even known, to the prisoners. There are also
"locked complaint boxes" located somewhere in the prison
where, we may infer from Deputy Kelley's declaration,
prisoners have access to them. But there is nothing in the
record to indicate that the boxes have anything written on
them to signify their purpose, or that prisoners are otherwise
advised of their purpose or location. Deputy Kelley states
that a written complaint may be "give[n] directly to staff," but
there is nothing in the record to indicate that inmates are told
that a complaint must be in writing in order to be considered.
Finally, we may infer from Deputy Kelley's declaration that
complaint forms are available only if a prisoner knows to
request them.

Albino declares, without contradiction, the following. He
declares that he was never given any orientation at the jail,

during which he could have been informed of a complaint process. He also declares that he has never seen the jail's personnel manual, a complaint box, or a complaint form. Finally, he declares that he repeatedly sought, and was denied, help from the prison staff. Specifically, he declares that he repeatedly complained "directly to the staff" (to use Deputy Kelley's words) that he needed to be placed in protective custody. Staff members never told him that complaint forms were "available for any inmate who requests them" (again to use Deputy Kelley's words), and they never construed Albino's complaints as requests for such forms. Nor did staff members tell Albino that he could put in a complaint box, or give directly to them, a written complaint, even if not on an official form. Instead, staff members repeatedly told Albino that he should seek relief by talking to his criminal defense attorney.

As we noted above, failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case. *Jones*, 549 U.S. at 212. Viewing all of the evidence in the light most favorable to Albino, we conclude as a matter of law that defendants have failed to carry their initial burden of proving their affirmative defense that there was an available administrative remedy that Albino failed to exhaust. We therefore reverse the district court's grant of summary judgment to defendants on the issue of exhaustion.

Albino, acting pro se, did not make a cross-motion for summary judgment. However, we conclude he would have succeeded had he made such a motion. We therefore direct *sua sponte* that summary judgment be granted to Albino on the issue of exhaustion.

We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party. *See, e.g.*, *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982); *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'") (quoting *Cool Fuel, Inc.*, 685 F.2d at 312). The Supreme Court implicitly recognized this authority in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), noting that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326. The authority to grant summary judgment *sua sponte* was made explicit in the current version of Rule 56, effective as of December 2010. Fed. R. Civ. P. 56(f).

If the record is sufficiently developed to permit the trial court to consider summary judgment, ant if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion, it may be appropriate for the district court to grant summary judgment *sua sponte* for the nonmovant on this issue. *See* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2720, at 351–52 (3d ed. 1998) ("[T]he practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate. It is in keeping with the objective of Rule 56 to expedite the disposition of cases . . . ."). Before *sua sponte*

summary judgment against a party is proper, that party "must be given reasonable notice that the sufficiency of his or her claim will be in issue:  Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993) (citation and internal quotation marks omitted).    Similarly, in *Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487 (9th Cir. 2000), we noted that "if a court concludes that a non-moving party is entitled to judgment, 'great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'" *Id.* at 494 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).  We further noted that "we should not reverse a summary judgment and order judgment for a non-moving party based on an issue that the movant had no opportunity to dispute in the district court."  *Id.* at 495.

We conclude that the concerns expressed in *Buckingham* and *Kassbaum* have been satisfied in a case such as this one, where, after having had a full opportunity to gather evidence, a defendant moves for summary judgment based on a failure to exhaust under the PLRA.  As the movants for summary judgment in this case, defendants were on notice of the need to come forward with all their evidence in support of this motion, and they had every incentive to do so. Defendants had ample opportunity to conduct discovery and to provide evidence to carry their burden of proof that administrative remedies were available.  There is nothing in the record to suggest that defendants' discovery with respect to exhaustion was curtailed in any way.  Indeed, most of the relevant evidence was within their knowledge and control.  In other

words, defendants "had a full and fair opportunity to ventilate the issues involved." *Cool Fuel, Inc.*, 685 F.2d at 312.

Viewing the evidence in the light most favorable to defendants, defendants have failed to show a genuine dispute as to whether administrative remedies in the jail were available. Albino was beaten several times and repeatedly complained orally to deputies in the jail, asking repeatedly to be placed in protective custody. The jail had a manual describing a procedure for handling inmate complaints, but this manual was for staff use only and was not made available to inmates. An "adequate supply" of Inmate Complaint Forms was kept "at various locations" within the jail. But such forms had to be requested by an inmate and were never provided to Albino, despite his repeated complaints. Nor was Albino told that he could write a complaint on an ordinary piece of paper and hand it to one of the deputies. Instead, Albino was told that it was his criminal defense attorney's job to protect him from attacks in the jail. In these circumstances, we conclude as a matter of law that defendants have not carried their burden of proving that the jail provided an "available" administrative remedy.

### Conclusion

We reverse the district court's grant of summary judgment for defendants and remand with instructions to enter summary judgment for Albino on the issue of exhaustion.

**REVERSED** and **REMANDED**.

N.R. SMITH, Circuit Judge, joined by TALLMAN and IKUTA, Circuit Judges, dissenting:

Albino is a sympathetic plaintiff. However, that fact should not excuse Albino from his duty to exhaust available administrative remedies, while other sympathetic plaintiffs are required to exhaust.

The Prison Litigation Reform Act of 1996 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Available" means "capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained." *Booth v. Churner*, 532 U.S. 731, 737 (2001) (quoting Webster's Third New International Dictionary 150 (1993)). Recently, the Supreme Court instructed us to adhere closely to the plain language of the statute and not interpolate our policy concerns into the statute. *Jones v. Bock*, 549 U.S. 199, 212, 216-17 (2007).

Here, the district court found administrative remedies that the County of Los Angeles offered in the jail were "capable of use" and could be obtained. Therefore, Albino had the obligation to exhaust these remedies before he could bring an action. The majority excuses Albino from that duty and instead places an affirmative duty on prison officials to inform inmates about the administrative remedies available. Nothing in the plain language of the PLRA even suggests that prison officials have the duties that the majority places upon them today. In other words, in order to afford relief to a sympathetic plaintiff, the majority takes extraordinary steps

and (1) ignores the "clearly erroneous" standard of review in reviewing the district court's findings; (2) mandates the production of unprecedented evidence in order for the defendants to meet their burden of proof on exhaustion; (3) grants summary judgment to the plaintiff *sua sponte*, without allowing the defendants the opportunity to produce the newly mandated evidence; and (4) changes the procedure by which our courts determine whether a plaintiff has exhausted administrative remedies. Because the majority's interpretation and application of the PLRA in this case deviates from the approach required by the Supreme Court and creates a circuit split with the Eighth and Tenth Circuits, I must dissent.

## I.

The majority rightly adopts the burden shifting framework for administrative exhaustion disputes applied in *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996). Maj. op. at 17. When a defendant alleges a failure to exhaust, it "has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that . . . remedies exist that the claimant did not use." Maj. op. at 17. (internal quotation marks omitted). Once a defendant shows that nonexhausted remedies exist, the plaintiff must show that the administrative remedies were unavailable to him. *See Hilao*, 103 F.3d at 778 n.5.

Applying this burden shifting framework to all of the evidence presented by both parties, the magistrate judge found that Baca met his burden. The court supported its conclusion with the following factual findings: (1) a grievance procedure existed at the Jail; (2) the procedure was accessible to inmates; and (3) Albino failed to "avail himself

of it." The district court adopted these findings in full. Even Albino concedes that Baca met his burden, as did the dissenting panel member of the three-judge panel. *Albino v. Baca*, 697 F.3d 1023, 1039–40 (9th Cir. 2012) (Gilman, J., dissenting) (concluding instead that Albino met his burden of establishing unavailability).

A district court's factual findings mandate our deference. The majority writes, "[D]isputed factual questions relevant to exhaustion should be decided by the judge." Maj. op. at 14. "[W]e will accept the judge's factual findings . . . unless they are clearly erroneous." Maj. op. at 15. This clear error standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. . . . Where there are two permissible views of the evidence, the factfinder's choice between them *cannot be* clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (emphasis added); *see also United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) ("[O]ur review of a factual finding may *not* look to what we would have done had we been in the trial court's place in the first instance, because that review would be de novo and without deference."). The clear error standard of review "is significantly deferential" to the district court. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004). As a result, a trial court's factual findings must be upheld when "fall[ing] within any of the permissible choices the court could have made." *Hinkson*, 585 F.3d at 1261.

In declining to defer to the district court's factual findings in this case, however, the majority contends that "[i]t is black-letter law that in granting summary judgment a district court cannot resolve disputed questions of material fact."

Maj. op. at 20. Because, in its view, the district court found only undisputed facts, it owes those findings no deference. *See id.* In so holding, it misunderstands the issue of exhaustion and the district court's role as factfinder.

Even when a nonexhaustion allegation is raised in a summary judgment motion, "we review the district court's . . . factual findings for clear error." *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010). Because the general summary judgment standard is designed to determine whether there "is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), it is inapposite in the exhaustion context. Instead, regardless of the form of the motion, district courts have simply decided the issue, and we have deferred to that finding on appeal. *See, e.g.*, *Morton*, 599 F.3d at 944–46; *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003).

This is so whether the findings pertain to disputed or undisputed facts. For instance, in *Morton v. Hall*, the district court ruled in favor of a defendant on its motion for summary judgment because the defendant had "sustained its burden to demonstrate the Plaintiff . . . did not exhaust his administrative appeals as required." 455 F. Supp. 2d 1066, 1075 (C.D. Cal. 2006). The district court's factual findings, upon which it based this decision, were based on evidence not disputed by the plaintiff. *Id.* at 1075. On appeal, this court reviewed the district court's factual findings and concluded that it "did not commit clear error by *finding* that Morton had failed to exhaust administrative remedies on his § 1983 assault claim." *Morton*, 599 F.3d at 945 (emphasis added). Therefore, the majority's contention that the presence of undisputed facts in this case gives it the right to find its own

facts or attach differing weight to evidence than did the district court is without merit. The district court's factual findings in deciding an exhaustion issue warrant our deference, whether disputed or undisputed.

Further, the trial court did decide disputed factual issues in this case. For example, "[t]he Court [found], based upon the submissions of the parties, that the Los Angeles County Jail had an accessible administrative procedure for seeking redress of grievances at the time of the incidents" despite Alibno's allegations that the Jail never informed him of the grievance procedure. Indeed, only "in light of the Court's finding that the jail had available administrative remedies," was it able to conclude that "summary judgment based on failure to exhaust [was] warranted." Thus, the trial court's conclusion that there was no "genuine issue of material fact as to the existence of a grievance procedure at the jail, its accessibility to inmates, or Plaintiff's failure to avail himself of it," was predicated upon its own factual findings to that effect. Regardless of the nature of these findings, this court may only overturn them if they are clearly erroneous. *Morton*, 599 F.3d at 945.

The trial court's factual findings here are supported by ample evidence in the record. Nevertheless, the majority concludes "as a matter of law" that Baca failed to satisfy his burden of proving "that there was an available administrative remedy . . . that Albino failed to exhaust." *Id.* However, that is not what happened here. Rather, the majority impermissibly seizes on facts considered and weighed by the district court and arrives at its own conclusion. *See* Maj. op. at 20–26; *Anderson*, 470 U.S. at 574 ("[T]he court of appeals may not reverse [the district court's account of the evidence]

even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

The posture of the majority opinion speaks louder than the one sentence purporting to decide the case as a matter of law. Indeed, the majority develops its own facts to support its conclusion that Baca failed to carry his burden. *See* Maj. op. at 20–26. That process is de novo review and conflicts with the Supreme Court's instruction to accord deference to lower court findings, *Anderson*, 470 U.S. at 573–74, and the majority's own framework, maj. op. at 15. Further, the majority's factual conclusions are wrong, as it discredits each piece of evidence supporting the existence of the Jail's grievance procedure independently, absent consideration of the process as a whole.

First, the majority decides the Custody Division Manual § 5-12/010.00 "is of little help to defendants," because Albino never saw it. Maj. op. at 24. However, Baca did not submit the Custody Division Manual's grievance procedure to prove Albino was aware of the procedure. He submitted it to document the existence of the procedure, as affirmed by Jail personnel. *See Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). Indeed, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). This section of the Custody Division Manual gives credence to the testimony that the grievance procedure existed.

Next, the majority discredits the availability of the grievance procedure, because Inmate Complaint Forms were only "available for *any inmate who requests them*." Maj. op. at 24 (quoting Deputy Kelley's declaration). However, the majority takes the quote out of context. Deputy Kelley's

affirmation also states that "Inmate Complaint Forms are available at various locations within the facility." Further, the majority fails to recognize that Jail procedures do not require that complaints only be filed on an Inmate Complaint Form to be effective—a complaint will be considered so long as it is written.

Third, the majority takes issue with a locked complaint box, decrying Baca's failure to confirm whether "the box is labeled in any way to indicate its function." *Id.* at 25. However, the majority ignores the fact that a complaint does not even need to be filed in a complaint box—the Jail would consider written complaints handed directly to Jail personnel.

The correct inquiry would have been to determine whether the district court's factual findings were "plausible." *Lentini*, 370 F.3d at 850. The evidence strongly supports the district court's factual findings, namely the presence of an "available" administrative remedy that Albino failed to exhaust. Indeed, it is beyond comprehension how a procedure as simple as writing a few words on a piece of paper and handing it to Jail personnel could somehow be "[in]capable of use." Maj. op. at 16. The majority's de novo review (in an effort to conclude otherwise) is inconsistent with governing law, the majority's own framework, and conflicts even with Albino's view of the law and facts. Albino never once argued that Baca failed to satisfy his burden, arguing rather that he had satisfied his own burden of showing how the procedures were effectively unavailable.

## II.

The majority shoulders Baca with production of evidence never before required in proving failure to exhaust

administrative remedies, focusing on the lack of evidence confronting Albino's testimony that the Jail never informed him of administrative remedies. Maj. op. at 24 ("[I]nmates were not even *told* of the existence of the Manual."); *id.* at 25 ("[T]here is nothing in Deputy Kelley's statement indicating that inmates are *told* that a complaint must be in writing."); *id.* at 26 ("Staff members never *told* him that complaint forms were 'available for any inmate who requests them.'"); *id.* at 29 ("Nor was Albino *told* that he could write a complaint on an ordinary piece of paper and hand it to one of the deputies.") (emphasis added in each).

Our prior prisoner exhaustion cases required jail officials to prove that they did not "hide the ball" from defendants. *See, e.g.*, *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) ("[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA."); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (excusing inmate's failure to exhaust, because "he took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake"); *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (excusing inmate's failure to exhaust, because he pursued some relief but was informed by prison personnel that no remedies were available). Today, the majority requires jail officials prove that, not only did they not hinder a prisoner's access to administrative remedies, but also that they informed the prisoner of them. What comes in the next case to excuse a sympathetic plaintiff?

Albino's counsel conceded at oral argument that Albino never even asked if there were a grievance procedure.

Although Albino spoke with his attorney about seeking medical care, the record does not show that he ever raised the issue of seeking protective confinement with him. His sole complaint: the Jail did not inform him of the procedure. As Baca's counsel aptly noted in oral argument, this case boils down to an inmate that alleges "I didn't see" rather than "I looked and couldn't find"; that alleges "no one told me" rather than "I asked and wasn't told or was told misinformation."

Indeed, neither the PLRA nor the Supreme Court has ever imposed such a duty on jail officials (alleging failure to exhaust) when the prisoner only alleged ignorance of the procedures; nor have any of the federal courts of appeal.[1] To the contrary, the majority's opinion creates a split with the Eighth and Tenth Circuits, which have held that such is irrelevant to defendants' burden. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him."); *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) (holding that there is "no authority for [the] assertion that the [prison] should have advised plaintiff of the need to follow BOP administrative procedures" (internal quotation marks omitted)).

It is no wonder then that Baca did not consider it necessary to confront Albino's testimony about his alleged unawareness of administrative remedies. Instead, litigants in this circuit were presumed to have knowledge of duly enacted laws, regulations, and procedures. *See Luna v. Holder*,

---

[1] Indeed the majority did not cite a single case to support this novel proposition. *See* Maj. op. at 25.

659 F.3d 753, 759 (9th Cir. 2011) (presuming aliens had notice of duly enacted federal regulations and guidelines issued thereunder). Grievance procedures in California jails are promulgated under the direction of state laws and regulations. *See* Cal. Penal Code § 6030(a); Cal. Code Regs. tit. 15, § 1073(a).[2]

## III.

While our court may grant summary judgment *sua sponte* to a non-moving party, "we should not [do so] based on an issue that the movant had no opportunity to dispute in the district court." *Kassbaum v Steppenwolf Prods., Inc.*, 236 F.3d 487, 495 (9th Cir. 2000) (citing *Fountain v. Filson*, 336 U.S. 681, 683 (1949)). Rather, "great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a

---

[2] Also instructive, the Third Circuit interpreted a statutory exhaustion provision similar to section 1997e(a) and declined to require a union to inform union members of grievance procedures in order for the procedures to be considered "available" under the exhaustion requirement. *Donovan v. Local 1235, Int'l Longshoremen's Ass'n*, 715 F.2d 70, 75 (3d Cir. 1983) ("The Secretary argues that we can [excuse the failure to exhaust, because] the union[] fail[ed] to inform its members as to the procedural requirements of its internal remedies. . . . The statute and regulations on which he relies do not support such a sweeping position. They provide only that the union must make its constitution and bylaws 'available' to its members."). *See also Hedges v. United States*, 404 F.3d 744, 753 (3d Cir. 2005) (stating that the plaintiff "cites no cases for the proposition that the Government [(in this case the Department of the Interior)] has an affirmative duty to inform litigants . . . that they have viable judicial, as well as administrative remedies," and refusing to "place such a responsibility on the Government which has inquiries from millions of individuals each year").

matter of law." *Id.* at 494 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)) (alteration in original). In *Kassbaum*, the court saw the issues and the law aligning in the non-moving parties favor, but "in the exercise of caution," it still declined to grant summary judgment *sua sponte* in favor of the non-movant. *Id.* at 495. The court respected the right of the parties to "have notice of [its] decision and an opportunity to be heard." *Id.*

The majority fails to exercise such caution here. Instead, the majority mandates the production of evidence never before necessary for defendants to prove that a plaintiff did not exhaust his administrative remedies. Then, without providing prior notice to Baca or an opportunity to submit evidence required under its newly articulated ruling, it grants *sua sponte* summary judgment in Albino's favor on the present record. The majority's lip service to the *Kassbaum* standard is the antithesis of "great care." 236 F.3d at 494.

No jail or prison in this circuit had previously been obliged to evidence that it had informed prisoners of administrative remedies to show those remedies' availability. Likewise, an inmate's subjective intent was previously inapposite to the inquiry. Thus, without notice, Baca has been afforded no opportunity to evidence, for example, (1) that the Jail actually informed Albino of the Jail's grievance procedure; (2) the number of inmates filing written complaints under the present system; or (3) the nature and labeling of the locked complaint box. Before today, Baca had no reason to dispute Albino's factual allegations to the contrary, because the resolution of those allegations was not necessary to resolving a motion for summary judgment for failure to exhaust administrative remedies.

Baca is entitled to notice and an opportunity to be heard. *Kassbaum*, 235 F.3d at 495. Given the new evidence which a defendant must hereafter produce to demonstrate the availability of administrative remedies, granting summary judgment *sua sponte* in favor of Albino is error. *See Norse*, 629 F.3d at 972.

IV.

Finally, the majority overrules circuit precedent to purportedly effect a "change of nomenclature" without changing the "practical operation" of court procedure dealing with exhaustion issues. Maj. op. at 4. However, if the majority means what it says in the opinion, it effects more than a "change of nomenclature."

Our opinion in *Wyatt v. Terhune* directed courts to treat a summary judgment motion alleging failure to exhaust administrative remedies "as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of judicial administration rather than an issue regarding the merits, district courts could "look beyond the pleadings and decide disputed issues of fact." *Sapp*, 623 F.3d at 821 (quoting *Wyatt*, 315 F.3d at 1119–20). In doing so, the court had "broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam) (internal quotation marks omitted). Then, on appeal, our court reviews the dismissal under Rule 12(b) *de novo* but reviews the district court's factual findings for clear error. *Id.*

Under the purported authority of *Jones v. Bock*, the majority now pens this decision overruling *Wyatt*. In the future, an allegation of "failure to exhaust is more appropriately handled" as a motion for summary judgment. Maj. op. at 4. Then if a factual dispute still persists at summary judgment, the motion must be denied. *Id.* at 14. Then only on the eve of trial (or later) may the district court decide the issue of exhaustion. *Id.* at 15. "On appeal, we will review the district judge's legal rulings on exhaustion de novo, but we will accept the judge's factual findings . . . unless they are clearly erroneous." *Id.* at 15. This decision is particularly surprising for a number of reasons.

First, "[a] goal of our circuit's decisions, including . . . en banc decisions, must be to preserve the consistency of circuit law." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). In other words, while an en banc panel has the authority to overrule circuit precedent, *id.* at 899, it must have a good reason to do so. I question whether a "change of nomenclature" constitutes such good reason.

Second, the Supreme Court cited *Wyatt* approvingly in *Jones*. 549 U.S. at 204 n.2, 212 (holding that circuit courts treating exhaustion as an affirmative defense "have the better of the argument"). In light of this favorable citation, the majority's decision to overrule *Wyatt* reads too much into *Jones*. Instead, it should "abide by the 'duty of restraint, th[e] humility of function as merely the translator of another's command.'" *Id.* at 216 (quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533–34 (1947)) (alteration in original).

Finally, and most importantly, the *Jones* Court emphasized that "the PLRA mandates early judicial screening

of prisoner complaints." *Jones*, 549 U.S. at 202; *accord Woods v. Carey*, 722 F.3d 1177, 1182 (9th Cir. 2013) ("Congress enacted the PLRA to . . . provide for [frivolous prisoner lawsuits'] dismissal at an early stage."). This "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Early judicial screening also helps "ensur[e] that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Id.* at 203. However, by designating summary judgment as the appropriate procedure in which to address allegations of nonexhaustion, maj. op. at 15, the majority's new framework will delay resolution of exhaustion disputes. In fact, the majority opinion guarantees it. Only in "rare" cases may exhaustion be decided on a motion to dismiss. *Id.* at 4. Then, even a decisive ruling at the summary judgment stage will be unlikely, because the district court cannot resolve factual disputes relating to exhaustion in deciding the motion for summary judgment. *Id.* at 5, 15. Only after denying summary judgment may the court then conclude whether a plaintiff has exhausted administrative remedies. *Id.* at 15  Even though the majority has stipulated that exhaustion is not a jury issue, *id.* at 5, its opinion has the effect of commissioning a trial (by the judge) to decide an issue that is widely viewed as one of judicial traffic control. *Id.* at 14; *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). This new procedure is utterly inconsistent with the PLRA, which "mandates early judicial screening of prisoner complaints." *Jones*, 549 U.S. at 202.

In summary, while the majority correctly preserves the district court's ability to make factual findings in determining an exhaustion issue and mandates our deference to the district court's factual findings on appeal (though it refuses to do so

here), it impermissibly alters the usual procedural practice in this circuit on the basis of perceived policy concerns. *See Jones*, 549 U.S. at 212. This alteration eliminates the district court's ability to decide the exhaustion issue "at an early stage." *Woods*, 722 F.3d at 1182. As a result, it effects much more than a "change of nomenclature." Maj. op. at 4.