**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL RAY FUQUA, AKA Michael Fuqua, *Plaintiff-Appellant*, v. CHARLES L. RYAN, Warden, Director of ADC Central Office; CAMIT, Correctional Officer II at Special Management Unit #1; FRANCISCO, CO III at SMU #1; STERNS, Sgt. at SMU #1; CLARK, Kitchen Manager at Trinity Food Services; DANCE, Disciplinary Coordinator Sgt. at SMU #1; SCHITTER, Disciplinary Captain at SMU #1; PEKCO, CO II Kitchen Security at SMU #1; JAMES O'NEIL, SMU #1 Eyman Complex Deputy Warden; JEFF RODE, SMU #1 Eyman Complex Associate Deputy Warden; JENNIFER HERNANDEZ, COIV at SMU #1 Eyman Complex; CARSON MCWILLIAMS, ADOC Divisional Director; UNKNOWN PARTIES, ADOC Correctional Officers employed at ADOC - in their official and individual capacities, Central Office COIII, Central Office COIV, | No. 16-15597 D.C. No. 2:15-cv-00286-NVW OPINION |

Central Office Deputy Warden, CO
II Kitchen Security at SMU #1,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted February 7, 2018
San Francisco, California

Filed May 18, 2018

Before:  Sidney R. Thomas, Chief Judge, and A. Wallace
Tashima and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Prisoner Civil Rights

The panel affirmed the district court's dismissal of certain defendants pursuant to 28 U.S.C. § 1915A and reversed the district court's summary judgment and remanded in a 42 U.S.C. § 1983 action brought by an Arizona prison inmate alleging violations of his right to religious liberty under the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, and the denial of due process.

Plaintiff is a devout Christian who was convicted of a disciplinary violation and terminated from his kitchen job assignment after he refused to work on a religious holiday. The district court found that plaintiff did not satisfy the exhaustion requirements of the Prison Litigation Reform Act because he initiated, but failed to complete, the grievance procedure by filing two inmate letters requesting an adjustment in his work schedule. The district court further determined that plaintiff's appeal of his disciplinary conviction did not satisfy the exhaustion requirement because his religious accommodation claim was not within the scope of, nor addressed on the merits by, his disciplinary appeal.

The panel held that although plaintiff's letters requesting a work schedule adjustment did not suffice to exhaust administrative remedies, plaintiff sufficiently exhausted his administrative remedies through the disciplinary process. The

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel noted that plaintiff had completed every step of the disciplinary appeal process and repeatedly voiced his need for religious accommodation. There was nothing ambiguous about plaintiff's request; defendants were clearly on notice of the relief he sought. The panel concluded that on this record, the purposes of the exhaustion requirement had been fully served, and that plaintiff was not required to pursue a separate administrative grievance on his religious accommodation claim while simultaneously pursuing his disciplinary appeal.

The panel affirmed the district court's decision to dismiss certain defendants at the screening stage pursuant to 28 U.S.C. § 1915A, holding that plaintiff's complaint had not explained how the dismissed defendants violated his rights under the First Amendment or the Religious Land Use and Institutionalized Persons Act.

## COUNSEL

James A. Sonne (argued), Supervisor; Kelsey A. Woodford (argued), Jane E. Kessner (argued), Charles E.T. Roberts, and Gilbert G. Walton, Elizabeth A. Callahan, Kevin C. Eaton, and William C. Griscom, Certified Law Students; Zeba A. Huq, Attorney; Religious Liberty Clinic, Stanford Law School, Stanford, California; for Plaintiff-Appellant.

Gregory D. Cote (argued), McCarter & English LLP, Boston, Massachusetts; Joseph E. Dylo (argued), Assistant Attorney General; Mark Brnovich, Attorney General; Liability Management Section, State Government Division, Office of the Attorney General, Phoenix, Arizona; for Defendants-Appellees.

**OPINION**

CHRISTEN, Circuit Judge:

Plaintiff-Appellant Michael Ray Fuqua is an Arizona inmate and a Christian who was scheduled to work in the prison kitchen on a religious holiday. Fuqua filed two inmate letters requesting that the Arizona Department of Corrections (ADOC) reschedule his kitchen shifts to accommodate the holiday, but his shifts were not rescheduled. When Fuqua refused to work on the holiday, he was returned to his cell and notified that he was charged with a disciplinary violation. After this incident, Fuqua was no longer scheduled to work as part of the kitchen crew.

At his subsequent disciplinary hearing, Fuqua was found guilty of Aggravated Refusal of an Assignment and several sanctions were imposed, including the loss of his job, disciplinary detention, and hours of extra duty.

Fuqua filed an unsuccessful disciplinary appeal, followed by a pro se complaint in federal district court. His complaint alleged violation of his right to religious liberty under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. He also alleged that he was denied due process under the Fifth and Fourteenth Amendments. The district court dismissed the due process claims and a number of defendants at the screening stage, and required the remaining defendants to answer the complaint's other allegations. At summary judgment, defendants argued that Fuqua failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), because he did not seek an accommodation of his religious practice through

ADOC's prisoner grievance process. The district court agreed and granted summary judgment to defendants. Fuqua appeals the district court's summary judgment ruling and its decision to dismiss certain defendants at the screening stage pursuant to 28 U.S.C. § 1915A(a).

We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that Fuqua did exhaust his administrative remedies, we reverse and remand.

## I.  BACKGROUND

### A.  Factual History

Fuqua's complaint alleges that he is a devout Christian whose sincerely held beliefs require that he obey all biblical laws.[1] The exercise of his faith requires him to observe the seventh-day Sabbath on Saturdays and eight High Sabbaths throughout the year, including Passover and the Feast of Trumpets.[2]

On September 21, 2014, prison staff informed Fuqua that he had been assigned a new job in the kitchen. The same day, Fuqua submitted a letter to Defendant Francisco, the Corrections Officer III responsible for all inmate work assignments, requesting that he not be scheduled to work on Saturdays and High Sabbaths, including Wednesday,

---

[1] Reviewing an order entering summary judgment, we construe the events that follow in the light most favorable to Fuqua, the non-moving party. *See Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2008).

[2] The Feast of Trumpets is an Old Testament holiday observed by some Christians. *See* Leviticus 23–25; Numbers 29:1.

September 24, the Feast of Trumpets. Fuqua offered to work "all other days," or "[e]ven more than 5 days a week," if necessary to allow him to observe his religious holidays.

On September 21, Fuqua reported to work as scheduled and attempted to deliver a copy of his letter to a correctional officer in the kitchen. He was instructed to give the letter to his kitchen supervisor, Defendant Starns, the next day.

Fuqua returned to the kitchen for work on Monday, September 22 and tried to give the letter to Sgt. Starns. According to Fuqua, Starns said, "we don't do that shit here," and refused to accept the letter.

On Tuesday, September 23, Fuqua again reported to the kitchen for work. He spoke to the kitchen manager, Defendant Clark, about his inability to work as scheduled on the religious holiday, and explained his need for religious accommodation. Defendant Clark instructed him to "do what you have to do," but cautioned that Fuqua "will not have a job here." Later on Tuesday, Francisco responded to Fuqua's September 21 letter and explained that because Fuqua already had Saturdays and Sundays off, his supervisor (Starns) must address scheduling for "specific days you need off for your various religious needs." Francisco's response also explained, "[o]ur kitchen must run 365 days a year."

Wednesday, September 24, 2014 was the Feast of Trumpets. Fuqua sent Francisco a second letter asking to trade his shift with a fellow inmate. He professed that he "want[ed] to work" and "[did] not want to get fired because I have to choose between my God's laws and [ADOC]'s rules." Fuqua reported to the kitchen "in order to again attempt to reason with . . . Defendants Sgt. Starns and

Kitchen Manager Clark," but he declined to work. Starns and Clark denied Fuqua's request to switch shifts with another inmate, and he was verbally cited with a disciplinary infraction for refusing to work. Fuqua was returned to his cell, and his complaint alleges that he was suspended from work as of September 24. Fuqua alleges he was orally charged with Aggravated Refusal of an Assignment, a 01B felony,[3] via an Inmate Disciplinary Report the same day.[4] On September 29, Fuqua received a response to his second letter in which Francisco again took the position that it was up to Fuqua's supervisor to resolve scheduling matters.

A disciplinary hearing was held on October 22. The record contains little information about what occurred at the hearing, but Fuqua was found guilty and assessed a penalty of five days of disciplinary detention, 30 hours of extra duty, and 30 days loss of privileges. Pursuant to Department Order (D.O.) 803, loss of privileges includes loss of access to the inmate store, telephone access, visitation, educational opportunities, and (especially relevant here) work opportunities. Fuqua filed a first-level disciplinary appeal with the Deputy Warden the same day. Using a pre-printed form, he checked boxes contesting the adequacy of proof and the severity of his penalty, and he argued in a narrative that he should not have been disciplined for observing a religious

---

[3] ADOC's Department Orders define "Aggravated Refusal of an Assignment" as "[r]efusal of any work assignment, housing assignment or classification assignment."

[4] Defendants argue Fuqua did not receive written notice of the disciplinary charge until October 2.

holiday.**⁵**   The Deputy Warden upheld the disciplinary decision, noting that the Feast of Trumpets "is not a holiday observed by the Department of Corrections according to the Chaplian's [sic] Office."   Fuqua filed a second-level disciplinary appeal with the ADOC Director, this time checking the "due process," "adequacy of proof," and "severity of penalty" boxes, and again asserting that he should not have been disciplined for observing a religious holiday.**⁶**   In a decision issued on December 17, 2014, the ADOC Director stated he had considered the issues Fuqua raised, but upheld the disciplinary findings and penalties and issued a final denial of Fuqua's appeal.

## B.  District Court Complaint

Fuqua filed a pro se complaint in federal district court alleging violation of his rights to religious liberty under the First Amendment of the United States Constitution and RLUIPA, and violation of his rights to due process under the Fifth and Fourteenth Amendments.   The district court dismissed the due process claims, and a number of

---

**⁵** On his first-level appeal form, Fuqua did not check the box indicating that he was raising a due process challenge.

**⁶** In both his first- and second-level disciplinary appeal forms, Fuqua's handwritten narrative next to "adequacy of proof" explained, "I was written up for observing the Feast of Trumpets, a High Sabbath in which Yahweh (God) commands that no work be done," and "[t]his is a violation to my 1st Amendment right to freedom to exercise my religion; 8th Amendment & 9th Amendments to the U.S. Constitution."   His narrative accompanying the "severity of proof" box on both forms described the penalty he received, argued it was too severe, and asserted he should not have received it because he was "observing a law of my faith."

defendants, pursuant to 28 U.S.C. § 1915A(a),**[7]** and required the remaining defendants to answer the First Amendment and RLUIPA claims.**[8]**

Defendant Clark filed a motion for summary judgment based on Fuqua's failure to exhaust administrative remedies, which Defendants Camit, Francisco, and Starns joined. The district court granted the motion. First, the district court observed that defendants met their initial burden of showing there was an administrative remedy available to Fuqua (the inmate grievance procedure) and that Fuqua did not complete the administrative appeal process by filing and appealing a grievance with the Warden or the ADOC Director concerning his work schedule. The court ruled that the prison's Department Orders clearly outlined the remedies available under the grievance procedure, and concluded that Fuqua did not show that these remedies were "effectively unavailable" to him.

The district court also rejected Fuqua's argument that his appeal of the disciplinary conviction exhausted his administrative remedies. The court reasoned that Fuqua's "appeal of his disciplinary conviction did not address the merits of his religious claims against Defendants, and it did not afford him a remedy against Defendants for their alleged

---

**[7]** Section 1915A(a) requires district courts to dismiss claims filed by prisoners against government officials or entities that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a).

**[8]** The remaining defendants were Camit, Francisco, Starns, and Clark. Fuqua's complaint alleges Camit, like Starns, was one of Fuqua's direct supervisors in the kitchen, but it does not specify the role Camit played in the disciplinary proceedings.

violations of his right to freely practice his religion." Because the disciplinary appeal only "addressed whether there was sufficient evidence to support [Fuqua's] disciplinary conviction, not whether [his] religious rights were violated," the district court concluded that Fuqua's disciplinary appeal did not exhaust the claim that defendants violated his right to freely practice his religion. This appeal followed.

## II.  STANDARD OF REVIEW

This court reviews de novo a district court's order granting summary judgment based on failure to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).  The defendants bear the burden to show an administrative remedy was available and that Fuqua failed to exhaust it.  *Id.* at 1172.  If the defendants make this showing, "the burden shifts to the prisoner to come forward with evidence showing there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  Because failure to exhaust is an affirmative defense that the defendants must plead and prove, the ultimate burden of proof remains with the defendants. *Jones v. Bock*, 549 U.S. 199, 212 (2007).

## III.  DISCUSSION

### A.  The Exhaustion Requirement

Fuqua's underlying claims arise from the First Amendment and RLUIPA.  The latter is a federal statute that forbids prison officials from substantially burdening the religious exercise of inmates in their care.  42 U.S.C. § 2000cc-1.  RLUIPA's requirements are not unlimited.  If

"inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution," a prison system may "resist the imposition." *Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005). But the Supreme Court has observed that RLUIPA provides "very broad protection for religious liberty." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)).

RLUIPA incorporates the administrative exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *See Albino*, 747 F.3d at 1171; *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005). As pertinent here, the PLRA mandates that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available* are exhausted.

42 U.S.C. § 1997e(a) (emphasis added).

Exhaustion requires complying with an agency's "critical procedural rules," and it is justified by the agency's need to "impos[e] some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). In addition to complying with the strict letter of the PLRA, requiring prisoners to exhaust administrative remedies serves other important objectives. Administrative appeals alert prison officials to "the nature of the wrong for which redress [was] sought," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th

Cir. 2009) (citation and internal quotation marks omitted), allowing them to take corrective action where appropriate. *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016). Exhaustion also allows a prison's administration "to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see also Woodford*, 548 U.S. at 93–95 ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case" (alteration, citation, and internal quotation marks omitted).).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014). Considerable deference is owed to those who administer prison systems, and courts recognize that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

Because this appeal requires us to decide whether Fuqua exhausted his administrative remedies, we describe in some detail ADOC's separate processes for inmate grievances and inmate disciplinary proceedings.

### 1. Grievance System (D.O. 802)

ADOC's grievance system is detailed in D.O. 802. The grievance procedure allows inmates to raise "complaints related to any aspect of institutional life or condition of confinement which directly and personally affects the inmate grievant." The grievance procedure is not, however, "a duplicate appeal process or substitute appeal process" for disciplinary proceedings outlined in D.O. 803. Inmates receive instruction on how to use the grievance system at the outset of their confinement and again each time they are transferred to a different unit.

As detailed in D.O. 802, the grievance process involves four key stages: (1) the filing of an informal complaint within ten working days of the action that caused the complaint, to which a Corrections Officer III responds; (2) the filing of a formal grievance within five working days of receipt of the Corrections Officer's response, to which the Deputy Warden responds; (3) the filing of a first-level appeal to the Warden; followed by (4) a second-level appeal to the Director. Under D.O. 802, "[t]he decision of the Director is final and constitutes exhaustion of all remedies within the Department."

### 2. Disciplinary Appeal Process (D.O. 803)

ADOC employs a separate process (detailed in D.O. 803) when inmates are charged with disciplinary infractions. The disciplinary process addresses noncompliance with written rules of inmate conduct, sanctions, and procedures for charged violations. Under D.O. 803, any ADOC employee may file an Inmate Disciplinary Report for alleged prisoner violations. The reporting employee must generally complete

the first portion of the Inmate Disciplinary Report form within 24 hours of the alleged violation or the date the investigation was completed and submit the report to the on-duty shift supervisor.

At a disciplinary hearing, the hearing officer has the discretion to modify the charge to a less serious offense. The hearing officer is responsible for reading the charge and ensuring the inmate understands it. The hearing officer also explains the range of possible penalties; asks if the inmate pleads guilty or not guilty; determines whether to call staff or inmate witnesses or whether written statements are adequate or necessary; and reveals to the inmate all evidence used at the hearing. At the conclusion of the hearing, the hearing officer may dismiss the charge, find the inmate not guilty, or find the inmate guilty and impose penalties as indicated in Attachment B to D.O. 803. The shift supervisor reviews and signs the report prior to forwarding it to the Disciplinary Coordinator. The inmate has five calendar days to file a first-level appeal. Within 20 calendar days, the Deputy Warden determines whether the inmate received due process, whether proof was adequate, and whether penalties were assessed properly. If the Deputy Warden approves the findings of the disciplinary hearing officer, the inmate may file a second-level appeal to the ADOC Director. The Director's review considers the same questions examined by the Deputy Warden. The Director's decision is final, and "all administrative remedies [are] considered exhausted" with the conclusion of the second-level disciplinary appeal.

ADOC prisoners may not use D.O. 803 to pursue grievances, nor use D.O. 802 to contest or appeal disciplinary infractions. *See* D.O. 802.01 ¶ 1.3. The Department Orders provide that if an inmate improperly initiates a D.O. 802

grievance related to a disciplinary charge, the inmate will be redirected to the D.O. 803 procedure. *See* D.O. 802.01 ¶ 1.4 (inmates who attempt to file grievances for disciplinary matters "will be instructed to follow the appeal process outlined in" D.O. 803 unless the grievance "is outside the scope of [that] . . . process"). But if an inmate attempts to pursue a disciplinary appeal for a matter more appropriately addressed by a grievance, the Department Orders do not require ADOC to redirect the inmate to D.O. 802.

## B. The District Court Ruled that Fuqua Failed to Exhaust his Administrative Remedies

In part, the district court decided Fuqua did not satisfy the exhaustion requirements of the PLRA because he initiated, but failed to complete, the grievance procedure by filing two inmate letters. The court also ruled that Fuqua's disciplinary appeal did not satisfy the exhaustion requirement because his religious accommodation claim was not within the scope of, nor addressed on the merits by, his disciplinary appeal. Fuqua argues on appeal that the letters he wrote to request that his kitchen shifts be rescheduled were not intended to be grievances and that he exhausted his administrative remedies by pursuing a disciplinary appeal in accordance with D.O. 803. He argues that, at every stage of the disciplinary process, he explained that his religion prohibited him from working on High Holy Days. More specifically, Fuqua argues that his request for a religious accommodation was within the scope of his disciplinary appeal because the disciplinary appeal *did* address the merits of his religious accommodation claim and because the disciplinary process

could have redressed his disciplinary conviction and the resulting sanctions.[9]

### 1. Fuqua's Letters Did Not Exhaust his Administrative Remedies

We agree that Fuqua's two inmate letters did not exhaust his administrative remedies. Defendants are correct that inmate letters are one of several ways ADOC inmates may initiate a grievance, *see* D.O. 802.02, but even Fuqua does not claim that the letters sufficed to exhaust his administrative remedies. Nor could he. The letters requested only that Fuqua's shifts be swapped so he would not be scheduled to work on his religious holiday. The letters did not request any other sort of relief or religious accommodation. Because Fuqua's letters requested only an adjustment in his work schedule, his subsequent suspension from the kitchen crew mooted the request raised in the two letters.

### 2. Fuqua Exhausted Administrative Remedies Through the Disciplinary Process

Fuqua argues that he employed D.O. 803 to exhaust his administrative remedies. He asserts that prior to and throughout the disciplinary process, he reiterated that his need to observe a religious holiday was the sole reason for his refusal to work. According to Fuqua, his religious exercise was his defense—indeed, his only defense—to the charge that he refused a work assignment.

---

[9] The parties focused on whether Fuqua exhausted his RLUIPA claim. We therefore address the PLRA's exhaustion requirement only in the context of RLUIPA, though the same analysis applies to the First Amendment claim.

Defendants' primary argument is that the limited scope of disciplinary appeals only allows prison officials to consider whether inmates received due process, whether findings made at disciplinary hearings were supported by adequate proof, and whether the penalties imposed were appropriate for the violation and consistent with the guidelines provided in an attachment to D.O. 803. *See* D.O. 803.09 ¶¶ 1.2.3.1.3, 1.2.4, 1.2.5. Given the circumscribed nature of the disciplinary proceedings, defendants argue Fuqua could not have raised his religious accommodation claim in his disciplinary appeal. We disagree.

### i. Defendants Did Consider Fuqua's Request for Accommodation in the Disciplinary Process

First, the contention that Fuqua was not allowed to raise his religious practice as a defense to the charge that he refused a work assignment contradicts the factual history of Fuqua's case. The record shows that Fuqua repeatedly raised his need for a religious accommodation, and that prison officials acknowledged that Fuqua's religious tenets were the basis for his refusal to work. His inmate letters and the prison officials' responses made plain that Fuqua was asking for a religious accommodation. The disciplinary report from September 24, 2014 reflected that Fuqua refused to conduct his work assignment due to "a religious holiday," and his first- and second-level disciplinary appeals explained that his religion mandates that "no work be done" on the Feast of Trumpets. The Deputy Warden and ADOC Director both considered and rejected Fuqua's request for religious accommodation in their responses to his first- and second-level disciplinary appeals.

Second, though defendants' briefs argued that Fuqua's religious exercise claim could not serve as a defense to the disciplinary charge, defendants acknowledged at oral argument before our court that Fuqua did raise his religious exercise claim as an affirmative defense. *See* Oral Argument at 14:57–15:30. Prison officials checked with the chaplain about whether the Feast of Trumpets was a recognized religious holiday before affirming his disciplinary sanction, and defendants conceded at oral argument that the outcome of the disciplinary process might have been different if the holiday were one recognized by the prison chaplain, like Easter or Christmas.[10] *See* Oral Argument at 16:15–47. By consulting with the prison chaplain to determine whether the Feast of Trumpets is a recognized holiday, and by conceding that Fuqua "probably would" have had a defense if the holiday he sought to observe had been Easter or Christmas, *see* Oral Argument at 16:23–46, defendants acknowledged that Fuqua's claim for religious accommodation was also his defense to the charge that he refused to work, and was therefore within the scope of the disciplinary appeal. Fuqua checked the "adequacy of proof" and "severity of punishment" boxes on his first- and second-level disciplinary appeal forms, explained that he was "written up for observing the Feast of Trumpets, a High Sabbath [o]n which Yahweh (God) commands that no work be done," described the penalty he received, and explained that being fired from his job and subjected to sanctions "for observing a law of my faith . . . where I should have never been given any penalty, is too severe." This record makes plain that Fuqua was challenging the adequacy of the proof that he refused a work

---

[10] Defendants do not cite any law to support their proposed distinction between widely recognized religious holidays and holidays not widely recognized.

assignment and was also arguing that the sanctions imposed were not appropriate. Without question, prevailing in his disciplinary appeal could have allowed him to obtain the relief he sought because it would have resulted in the expungement of his conviction and the resulting sanctions. *See* D.O. 803.09 ¶¶ 1.2.4 (scope of first-level appeal to Deputy Warden is whether inmate received due process, whether there was adequacy of proof, and whether *penalties were assessed appropriately*), 1.2.5.1.1 (scope of second-level appeal to Director involves the same considerations). The history of Fuqua's case belies defendants' argument that D.O. 803 cannot account for a prisoner's religious practice.

Finally, we note that the parties focused only on the remedies provided by D.O. 802 and 803, but they included D.O. 904 in the record and it appears to allow accommodation of weekly "no-work" days, such as Sundays and other weekly Sabbaths. And with 30 days notice, D.O. 904 allows prisoners to request "no-work" days that do not recur each week, like the holiday at issue here. *See* D.O. 904.04 ¶ 1.2.4. Fuqua was assigned to his kitchen job just three days before his religious holiday, so a request for relief pursuant to D.O. 904 was not available to him. But another provision of D.O. 904 makes clear that ADOC recognizes there are times when requests for religious accommodation must be addressed in the disciplinary process. *See* D.O. 904.04 ¶ 1.1.1.3 (requiring that inmates placed in disciplinary isolation not be denied access to religious items or opportunities).

### ii.  RLUIPA Mandates Consideration of Fuqua's Requested Accommodation

Defendants' contention that a religious practice cannot be raised as a defense to a disciplinary charge also contradicts RLUIPA's statutory mandate against the imposition of "substantial burden[s] on the religious exercise" of incarcerated individuals. 42 U.S.C. § 2000cc-1. It is worth repeating that the only infraction for which Fuqua was disciplined was his refusal to obey an order that directly contravened the religious tenet that he not work on his religious holiday.  RLUIPA requires that if a prisoner establishes that the government's refusal to provide religious accommodation substantially interfered with his religious exercise, the burden shifts to the government to prove that its action was "in furtherance of a compelling governmental interest" and was the "least restrictive means of furthering that compelling governmental interest." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quoting 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)); *see also* 42 U.S.C. § 2000cc-5 (defining "religious exercise" for the purpose of RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief"); *Cutter*, 544 U.S. at 725 n.13 (observing that RLUIPA requires that prison officials focus their inquiries on "the sincerity of a prisoner's professed religiosity").

We do not reach ADOC's implied argument that it is at liberty to decide which holidays are recognized, nor whether Fuqua's religious beliefs were sincere, nor whether Fuqua's request was somehow burdensome.  Our task is to review only the district court's threshold determination that Fuqua failed to exhaust his administrative remedies, and we reject

defendants' contention that he could not have done so within the confines of the disciplinary process.

### 3.   Only Available Remedies Must Be Exhausted

By its terms, the PLRA requires only the exhaustion of "available" administrative remedies, *see* 42 U.S.C. § 1997e(a), and on several occasions we have found administrative processes unavailable even though they exist on the books.  In *Marella v. Terhune*, we reversed the district court's dismissal of a prisoner's complaint for failure to exhaust because the inmate did not have access to the proper grievance form within the prison's time limits for filing a grievance.  568 F.3d 1024, 1026 (9th Cir. 2009) (per curiam). In *Nunez v. Duncan*, we reversed a district court order dismissing on exhaustion grounds a prisoner's complaint where the prisoner would have needed to access an unobtainable policy in order to bring a timely administrative appeal.  591 F.3d 1217, 1226 (9th Cir. 2010).  And sitting en banc in *Albino v. Baca*, we concluded that administrative remedies were unavailable because prisoners were not given access to, nor told about the existence of, a manual describing the inmate complaint process.  747 F.3d at 1173.

More recently, the Supreme Court explained that administrative procedures may be functionally unavailable if "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Ross*, 136 S. Ct. at 1859. The respondent in *Ross* sued two prison guards under 42 U.S.C. § 1983 for using excessive force and failing to take protective action while moving him to a segregation unit. *Id.* at 1855.  The prisoner acknowledged that he had not sought a remedy through the prison's administrative remedy procedure because he thought the prison system's Internal

Investigative Unit, which conducted an inquiry into his allegations, "served as a substitute for that otherwise standard process." *Id.* The Supreme Court noted that the PLRA contains a "textual exception to mandatory exhaustion," namely, that prisoners "need not exhaust *unavailable* [remedies]," *id.* at 1858 (emphasis added), and concluded that the "available" remedies that must be exhausted are procedures that are "capable of use to obtain some relief for the action complained of," *id.* at 1859 (citation and internal quotation marks omitted). The Court identified three circumstances in which an administrative procedure may be deemed unavailable within the meaning of the PLRA, including where the procedure is "so opaque that it becomes, practically speaking, incapable of use."[11] *Id.* Because the record in *Ross* suggested the state's grievance procedure had "some bewildering features," the Court remanded the case for further consideration of whether the respondent had available remedies to exhaust. *Id.* at 1860, 1862.

We have said that the particular circumstances of the prisoner's case must be considered when deciding whether administrative remedies were properly exhausted. *Albino*, 747 F.3d at 1172. Under the particular circumstances of Fuqua's case, we do not hesitate to conclude that ADOC's

---

[11] The *Ross* decision was issued after the district court ruled in this case. In *Ross*, the Court concluded that an administrative procedure is unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief," or "where the relevant administrative procedure lacks authority to provide any relief"; (2) it is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands"; or (3) "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60 (citations and internal quotation marks omitted).

expectation that Fuqua would exhaust his religious accommodation claim by pursuing a grievance pursuant to D.O. 802, while simultaneously pursuing a D.O. 803 disciplinary appeal, is precisely the sort of "essentially 'unknowable'" procedure that the *Ross* Court had in mind. *Ross*, 136 S. Ct. at 1859.

First, we are at a loss to divine what the substance of Fuqua's grievance would have been. Fuqua was assigned to his new job in the kitchen on September 21. D.O. 904 would have required that he provide 30 days notice of his request to be rescheduled, but Fuqua did not have 30 days notice that he would be ordered to work on the Feast of Trumpets. Second, the two letters Fuqua drafted on September 21 and 24 only sought shift changes. He did not receive a response to his second letter until September 29, five days after he was suspended from work. At that point, no purpose would have been served by grieving the denial of his requests to be rescheduled, because Fuqua was no longer scheduled to work in the kitchen; he had already been suspended. Even if Fuqua had filed a formal grievance prior to the disciplinary hearing to address his suspension from the kitchen crew, the loss of his job was imposed as a disciplinary sanction after he was convicted of the disciplinary infraction, along with other sanctions, and ADOC policy is absolutely clear that grievances may not be used as substitutes for appealing disciplinary convictions or sanctions. *See* D.O. 802.01 ¶¶ 1.3, 1.4 (providing that inmates may not file a grievance unless the issue raised in the grievance is "outside the scope" of any disciplinary action). The only path for contesting the conviction and sanctions was by exhausting a disciplinary appeal. Fuqua completed every step of the disciplinary appeal process and repeatedly voiced his need for religious accommodation. There was nothing ambiguous about

Fuqua's request; defendants were clearly on notice of the relief he sought.  *See Griffin*, 557 F.3d at 1120.  On this record, we conclude "the purposes of the PLRA exhaustion requirement have been fully served." *Reyes*, 810 F.3d at 658.

## C.  Reinstatement of Screened Defendants

Fuqua does not appeal the dismissal of his due process claims, but he urges us to direct the district court to reinstate certain defendants who were dismissed at the screening stage. We decline to do so.  Because Fuqua's complaint does not explain how the dismissed defendants violated his rights under the First Amendment or RLUIPA, we affirm the district court's dismissal of the defendants. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.  CONCLUSION

We reverse the district court's ruling that Fuqua failed to exhaust his available administrative remedies.  The claims Fuqua exhausted are limited to: (1) the request to have his shifts rescheduled; (2) the defense that his refusal to work in the kitchen on September 24, 2014 was because of his religious exercise; and (3) the argument that the conviction and sanctions should be expunged as violative of the First Amendment and RLUIPA.  We affirm the district court's § 1915A screening decision, and remand for consideration of the merits of Fuqua's First Amendment and RLUIPA claims. Fuqua is awarded his costs on appeal.  *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED in part, REVERSED in part, and REMANDED.**