**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 27 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DAVID SCOTT PEASLEY,

       Plaintiff-Appellant,

  v.

M. ELIOT SPEARMAN, Warden; et al.,

       Defendants-Appellees,

 and

P. MULLEN, Appeal Coordinator,

       Defendant.

No.   18-56648

D.C. No. 5:15-cv-01769-LHK

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted January 13, 2022
Pasadena, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,[**] District
Judge. Partial Dissent by Judge FRIEDLAND.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

Plaintiff-Appellant David Peasley, a California prisoner, brought an action against several prison officials under 42 U.S.C. § 1983, alleging that the officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Peasley suffers from Type 1 diabetes and he alleges that various actions by the officials improperly denied him treatment for his medical needs. The district court granted the officials' motion for summary judgment and dismissed all counts except for two counts (Counts 4 and 8), which subsequently proceeded to trial.

Peasley appeals from the district court's summary judgment dismissing Counts 6 and 9 of his amended complaint. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's summary judgment de novo. *See Mull for Mull v. Mot. Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017) (citation omitted). We reverse and remand the district court's dismissal of Count 6, and we affirm the district court's dismissal of Count 9.

**A.**

In Count 6, Peasley alleges that Defendants Officers Lopez, Gibson, and Orozco violated the Eighth Amendment by denying him access to medical care. The district court dismissed Count 6 on non-exhaustion grounds, holding that Peasley failed to file properly an appeal with the Inmate Appeals Office and failed to show that administrative remedies were unavailable. For the following reasons, we hold

2

that Peasley's failure to exhaust administrative remedies does not bar his claim because the administrative scheme is so opaque that it is effectively unavailable. Accordingly, we reverse and remand.

Under the Prisoner Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion requires complying with an agency's 'critical procedural rules,'" and the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," as it is "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Fuqua v. Ryan*, 890 F.3d 838, 844–45 (9th Cir. 2018) (citations omitted). A failure to exhaust, however, does not bar a prisoner's claim if "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). For instance, an administrative procedure is effectively unavailable when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 578 U.S. 632, 643 (2016). "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44.

In this case, it is undisputed that Peasley did not exhaust administrative remedies, but Count 6 should not have been dismissed for failure to exhaust because the process was so opaque as to be unavailable. *See id.* At the outset, it appears that Peasley received conflicting instructions from different appeals administrators that foreclosed any possible remedy. Peasley's initial complaint, a CDCR Form 602 complaint filed on September 30, 2013, alleges that he was denied access to medication by "security officers" Lopez, Orozco, Balli, and Gibson. Specifically, he alleges that officers were "very rude" about his "medical need" and "denied medical itself." The complaint was only against security officers and did not raise any allegations against nurses or any healthcare staff. The complaint was initially filed with the inmate appeals office but was subsequently forwarded and refiled with the health care appeals office. Each appeals office rejected his complaint and referred him to the other office, appearing to foreclose any remedy.

Moreover, it is unclear whether an appeals office's jurisdiction turns on the issue involved or on the staff involved. The initial rejection letter from the inmate appeals office suggests that jurisdiction turns on the issue involved, as it advised Peasley that his "appeal issue should be submitted to the appropriate CDCR unit for review" and that his "appeal has been forwarded to health care staff for review and processing." Appellant's Excerpts of Record Vol. 3 at 32, *Peasley v. Spearman*, No. 18-56648 (9th Cir. Feb. 19, 2021), ECF No. 33-3. The subsequent rejection letter

4

by the health care appeals coordinator then indicated to Peasley that he cannot submit an appeal to the health care appeals office that contains both "custody and medical issues which cannot be addressed together," and must "[s]eparate [his] issues and resubmit health care issues." *Id.* at 34. However, after Peasley resubmitted the same complaint to the health care appeals office and specifically referred to his "medical" need, the health care appeals office then proceeded to reject the appeal because his "appeal issue is not a health care services issue over which [it] has jurisdiction," and instructed Peasley to "submit a green inmate/parolee appeal CDCR 602 form to the Inmate Appeals Office" if he "would like to proceed with a staff complaint against custody." *Id.* at 29. This suggests that the health care appeals office does not handle complaints against custodial staff, even if about a medical issue. If the appeals offices themselves cannot agree on whether jurisdiction turns on the subject of the complaint or the personnel involved, we cannot expect an ordinary prisoner to discern the answer and navigate the process. *See Ross*, 578 U.S. at 643–44.

The rejection letters could be read to suggest that generally medical issues should be referred to the health care appeals office while custody issues should be referred to the inmate appeals office. But the letters only focused on a requirement that "multiple issues" be separated into separate appeals and did not provide any guidance on what is required in a situation like Peasley's. For instance, it is unclear if a complaint like Peasley's that alleges medical issues against custodial staff should

5

be filed with the health care office or the inmate office. Similarly, there is no guidance on where a complaint that alleges custodial issues against medical staff should be filed. Indeed, a detailed review of the record and briefs leaves us unable to determine where and how Peasley should have filed his complaint, or if such a complaint is even possible. Thus, the administrative procedure here is "so confusing that . . . no reasonable prisoner can use them," making it essentially "no longer available." *Ross*, 578 U.S. at 644 (citation omitted). We reverse the district court's dismissal of Count 6 on non-exhaustion grounds and remand for further proceedings.

**B.**

In Count 9, Peasley alleges that Defendant Officer Lopez violated the Eighth Amendment by denying him, a "diabetic who uses insulin and has food requirements," entry to his building at lunchtime. The district court granted summary judgment and dismissed Count 9, holding that Peasley failed to raise a genuine dispute of material fact as to whether Officer Lopez was aware of Peasley's serious medical need. We agree with the district court and affirm.[1]

A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment because it constitutes "unnecessary and

---

[1] Because we conclude that the district court is correct in holding that there is no genuine dispute of material fact as to whether Defendant Officer Lopez was aware of a serious medical need by Peasley, we need not address Officer Lopez's qualified immunity arguments.

wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. Thus, the standard sets a high bar. Indeed,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In essence, "deliberate indifference" requires "a showing that the official was subjectively aware of the risk." *Id.* at 829.

Here, Peasley alleges that Officer Lopez purposefully denied him access to medical care when she denied him access to his building during lunch time. But Peasley failed to provide any direct evidence to show that Officer Lopez knew that he had a significant medical need. On September 16, 2013, after Peasley received

7

his insulin during an appointment, he arrived late to his building at lunchtime and Officer Lopez denied him entry until the next release time. Peasley informed Officer Lopez that he needed lunch, and Officer Lopez responded "that's good enough" when she found crackers in Peasley's pocket. Peasley's mere assertion that he needed lunch on September 16, 2013, is insufficient to show that Officer Lopez knew he had a serious medical issue. By his own admission, Peasley never told Officer Lopez that he had just received insulin and needed lunch for medical purposes. He also did not explain to Officer Lopez why he needed to be let into his building for lunch and why the small snack in his pocket was not enough. There is also no evidence in the record that shows Officer Lopez knew Peasley had received an insulin shot right before his request for lunch on that date. In short, Peasley did not mention his diabetes or his need for lunch due to a serious medical issue to Officer Lopez when he was denied entry to his building.

Instead, Peasley relies only on various circumstantial evidence to show that Officer Lopez knew of his serious medical issue. To be sure, there is evidence that Officer Lopez knew that Peasley had diabetes. For instance, Peasley alleges that on September 9, 2013, he informed Officer Lopez that he had an urgent need for medical attention because his morning and noon blood tests indicated high blood sugar levels. In addition, Officer Lopez's deposition testimony suggests that she knew crackers are "something special to diabetics" and that diabetics "keep crackers

8

in their cell" so they "can eat if they need to." Ultimately, however, none of the circumstantial evidence shows that Officer Lopez subjectively knew Peasley had a serious medical issue on September 16, 2013, when he asked to be let into his building for lunch. *Cf. Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (holding that officers knew of plaintiff's diabetic condition because he told the officers of his deteriorating condition and pleaded that he is "a diabetic, and all [he] needed was food"). Moreover, there is no evidence that Peasley was otherwise visibly ill or clearly experiencing health issues. *Cf. id.* (holding that a jury could infer that the officers knew of the plaintiff's diabetic condition because they could infer from his testimony that he "exhibited noticeable shaking, disorientation, sweating and pallor"). Nor was there a pattern of Peasley requesting entry for lunch due to his medical condition. *Cf. Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (concluding that custody officers were subjectively aware of plaintiffs' serious medical needs in part due to plaintiffs' "repeated requests for attention, complaining of breathing problems, pain, and asthma attacks"). Had Peasley told Officer Lopez he was diabetic and needed food for medical purposes or that he just received an insulin shot on September 16, 2013, it would have clearly created a genuine dispute of material fact as to whether Officer Lopez knew of his serious medical need and purposefully denied the necessary medical care.

9

Therefore, we agree with the district court that Peasley failed to show a genuine dispute of material fact as to whether Officer Lopez knew of his serious medical need at the time of the incident. Accordingly, we affirm the district court's dismissal on Count 9.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

*Peasley v. Spearman*, No. 18-56648

FRIEDLAND, Circuit Judge, dissenting in part:



I agree with the majority's analysis of Count 6, but I would reverse the grant

of summary judgment to Officer Lopez on Count 9. I believe there was a genuine

dispute whether Officer Lopez knew of Peasley's serious medical need when she

denied Peasley access to his building at lunchtime on September 16, 2013. And

because it was clearly established that "a constitutional violation may take place

when the government does not respond to the legitimate medical needs of a

detainee whom it has reason to believe is diabetic," *Lolli v. County of Orange*, 351

F.3d 410, 420 (9th Cir. 2003), I would hold that Officer Lopez is not entitled to

qualified immunity.

The majority concludes that because Peasley did not tell Officer Lopez in

the moment that Peasley was diabetic, that he had just taken insulin, and that he

needed lunch due to his medical condition, he failed to create a genuine issue of

material fact regarding Lopez's subjective knowledge of his diabetic condition and

medical need. But there is evidence in the record that Lopez already knew Peasley

was diabetic and could have inferred that his urgent request for lunch was related

to a serious medical need.

Peasley stated in a sworn declaration that on September 9, 2013—one week

before Lopez denied him access to lunch—he awoke feeling sick, nauseous,

1

sluggish, and drained. After his condition did not improve during the day, he requested an urgent medical pass from Lopez, who refused and instead locked him in a cell. Peasley declared that on that day, "Defendant Lopez was well aware of the diabetes. She was told of [the] illness and was asked for urgent medical care." He also stated, more generally, that "each officer is aware of who the few are (diabetics)."

Officer Lopez's deposition testimony also supports the inference that she knew of Peasley's diabetes and his medical need for food. When Lopez told Peasley that he did not need a meal because he had crackers in his pocket, she knew that such crackers were "something special to diabetics." But Peasley arrived at the building shortly after noon, and Lopez told him that he could not go back in until 2:30 p.m. Viewing these facts in the light most favorable to Peasley, a reasonable jury could conclude that Lopez knew of and consciously disregarded the substantial risk of serious harm Peasley faced if deprived of a meal for over two hours. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Because I believe there was a genuine issue of material fact that precluded summary judgment, I respectfully dissent.